IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CHRISTA A. NEAL, As Representative of the
Wrongful Death Beneficiaries of Tamara Neal,
Deceased                                                                        PLAINTIFF

V.                                                             CIVIL ACTION NO. 1:08CV262-B-D

LEE COUNTY, MISSISSIPPI                                               DEFENDANT

<u>**MEMORANDUM OPINION**</u>

This cause comes before the court upon the defendant's motion for judgment on the

pleadings and the plaintiff's motion to amend.  Upon due consideration of the motions,

responses, exhibits, and supporting and opposing authority, the court is ready to rule.

<u>Factual and Procedural Background</u>

The plaintiff, Christa A. Neal, filed this action on November 10, 2008, against Lee

County, Mississippi, and its sheriff and another employee in both their official and individual

capacities, seeking wrongful death damages under 42 U.S.C. § 1981, 42 U.S.C. § 1983, the

Fourteenth Amendment of the United States Constitution, and state law.  The individual

defendants and the plaintiff's claims under state law were dismissed with prejudice by

stipulation on March 18, 2009, leaving only the plaintiff's federal claims against Lee County

pursuant to Section 1983.[1]

This suit arises from an incident which occurred in Lee County on June 26, 2006.  On

that date, Tamara Neal, the decedent, appeared in the lobby of the Lee County Sheriff's

Department and reported that she was being stalked by Bernard Young, her ex-boyfriend and the

---

[1]The stipulation does not reference 42 U.S.C. § 1981, but it is now uncontested that the statute is
inapplicable in this case.

father of her children.  Neal requested that she be allowed to press charges against Young and

was assisted in this matter by sheriff's department employee Carrie Culver.  While the report

was being taken, Young entered the Lee County Sheriff's Department and indicated to Neal that

he simply wished to speak with her.  Neal refused to speak with him and insisted that she was

filing charges against him.  Young then left the sheriff's department.

Upon discovering that Neal lived in Plantersville, Mississippi, Culver erroneously

advised her that she would be required to file the charges there instead of the Lee County

Sheriff's Department.  Neal left the sheriff's department and headed to Plantersville.  While Neal

was en route to Plantersville on Mississippi Highway 6, Young blocked her path, exited his

vehicle, and shot the decedent in the chest five times, immediately killing Neal.  Young then

surrendered himself to the Lee County Sheriff's Department.

The plaintiff, Christa Neal, subsequently filed this action on behalf of the wrongful death

beneficiaries of Tamara Neal.  The defendant answered, and the pleadings in this case are now

closed.  The defendant has moved for judgment on the pleadings.  The plaintiff has moved to

amend her complaint to add a First Amendment claim and a claim pursuant to Mississippi's

Protection from Domestic Abuse Law, Miss. Code Ann. § 93-21-28.

<u>Standard of Review</u>

"After the pleadings are closed – but early enough not to delay trial – a party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings

under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."

*Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).  "The central issue is

whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."

*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). In ruling on the motion, "the district court is confined to the pleadings and must accept all allegations contained therein as true." *Id.*

The plaintiff moves to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a). Rule 15(a) provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has held, however, that Rule 16(b) applies in cases such as the one at bar in which the scheduling order deadline has expired. The court has stated, "We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enterprises, LLC v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003). In either case, "[w]hether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007).

<u>Analysis</u>

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law." The Equal Protection Clause of the same amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The plaintiff contends that the decedent had a property interest in her right to police protection created by Mississippi's Protection from Domestic Abuse Law and that the defendant deprived her of that interest in violation of the Due

Process Clause.  The plaintiff further contends that Lee County did not provide equal protection to Tamara Neal and blocked her right to access to the courts in violation of the Equal Protection Clause and the First Amendment.  The plaintiff asserts that Lee County committed these violations by failing to train its employees properly, thus bringing the action within the purview of Section 1983.  She alleges that this failure to train resulted in requiring the decedent to leave the sheriff's department while her estranged boyfriend was following her and in a hostile frame of mind.

The Fourteenth Amendment claims are the only claims properly before the court at this time.  The plaintiff has, however, moved to amend her complaint to include claims under Mississippi's domestic abuse law and the First Amendment.  Because the plaintiff's existing and proposed claims are rather intertwined, the court will address the motion to amend before delving further into constitutional analysis.

As set forth above, Federal Rule of Civil Procedure 16(b) applies when the scheduling order deadline has expired.  Such is the case here.  The plaintiff's motion to amend is untimely.  The motion was filed more than forty-five days after the deadline for such amendments as provided in the Case Management Plan and Scheduling Order.  Rule 16(b) requires a showing of good cause for the delay.  Even if the plaintiff is able to show good cause, the court must still consider the potential prejudice to the defendant if the amendment is allowed.  *See S&W Enterprises*, 315 F.3d at 536.  It is also within the court's discretion to deny the motion to amend if the amendment is futile.  *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).  The Fifth Circuit has defined "futility" in this context to mean "that the amended complaint would fail to state a claim upon which relief could be granted."  *Id.*  To determine

4

futility, the court applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

Plaintiff's counsel contends that previously undiscovered facts came to light at the deposition of Carrie Culver – a deposition which apparently could not be taken prior to the amendment deadline – which call for the proposed claims.  Accordingly, counsel urges that the plaintiff be allowed to amend.  Plaintiff's counsel does not state the nature of these facts.  The court finds that the proposed claims appear to be new theories of recovery based on the same basic underlying facts as the existing claims, and the plaintiff's attempt to show good cause is unconvincing.  Further, the court finds that the defendant would be prejudiced by such an untimely amendment.  Ultimately, however, the court finds that the amendment would be futile; thus, the court may assume arguendo that the plaintiff has provided good cause and that the defendant will not be prejudiced by an amendment, and yet the plaintiff's motion must still be denied.

By amending her complaint to state claims under Mississippi's domestic abuse law, the plaintiff seeks to establish a property interest in the decedent's right to police protection under the statute.  A similar argument was rejected by the United States Supreme Court in *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748 (2005).  The Court held in *Castle Rock* that a mother had no property interest or personal entitlement in police enforcement of a restraining order against her estranged husband and father of her children even though the father murdered the children while the mother made repeated requests for help with the local authorities when the father took the children.  *Id.* at 748.  The Court aptly described the facts of the case as "horrible" – an adjective certainly applicable to the facts of the present case; yet, even in the light of

5

mandatory arrest provisions in Colorado's domestic violence statute, the court found that the

statute did not create a property interest and that the municipality was not liable. *Id.* at 751, 760.

Similar mandatory language exists in Mississippi's Protection from Domestic Abuse

Law.  For instance, the statute states, in pertinent part:

> A person who alleges that he or she or a minor child has been the victim of
> domestic violence may request the assistance of a local law enforcement agency.
> The local law enforcement agency **shall** respond to the request for assistance.
> The local law enforcement official **shall** take whatever steps are reasonably
> necessary to protect the complainant from harm and **shall** advise the complainant
> of sources of shelter, medical care, counseling and other services.

Miss. Code Ann. § 93-21-28(1) (emphasis added).  The *Castle Rock* Court was unpersuaded by

the mandatory language, stating:

> We do not believe that these provisions of Colorado law truly made
> enforcement of restraining orders mandatory.  A well established tradition of
> police discretion has long coexisted with apparently mandatory arrest statutes . . .
> . [F]or a number of reasons, including their legislative history, insufficient
> resources, and sheer physical impossibility, it has been recognized that such
> statutes cannot be interpreted literally.  They clearly do not mean that a police
> officer may not lawfully decline to make an arrest.  As to third parties . . . the full-
> enforcement statutes simply have no effect, and their significance is further
> diminished.

> The deep-rooted nature of law enforcement discretion, even in the presence of
> seemingly mandatory legislative commands, is illustrated by *Chicago v. Morales*,
> which involved an ordinance that said a police officer "shall order" persons to
> disperse in certain circumstances.  This Court rejected out of hand the possibility
> that "the mandatory language of the ordinance afforded the police *no* discretion."
> It is, the Court proclaimed, simply "common sense that *all* police officers must
> use some discretion in deciding when and where to enforce city ordinances."

> Against that backdrop, a true mandate of police action would require some
> stronger indication from the Colorado Legislature than "shall use every
> reasonable means to enforce a restraining order" (or even "shall arrest or seek a
> warrant").

*Castle Rock*, 545 U.S. at 760-61.  This court notes that the Mississippi statute is distinguishable from the Colorado statute in that Colorado's is an arrest statute whereas Mississippi's is a protection statute.  The court is confident that the *Castle Rock* Court would find this difference of no consequence, however, as that Court also addressed the "entitlement" argument from the victim's perspective.  The Court found that a person cannot "be safely deemed 'entitled' to something when the identity of the alleged entitlement is vague." *Id.* at 763.  The *Castle Rock* plaintiff, like the plaintiff in the present case, did not specify the means of enforcement that the statute at issue allegedly mandated.  *Id.*  In *Castle Rock*, it was unclear "whether [the plaintiff's alleged] interest lay in having police arrest her husband, having them seek a warrant for his arrest, or having them 'use every reasonable means, up to and including arrest, to enforce the order's terms.'" *Id.*  Likewise, the plaintiff in this case has failed to specify the nature of her entitlement except to say that Carrie Culver should not have required her to travel to Plantersville to press charges against Young.  The plaintiff has made no allegations that Tamara Neal requested immediate protection or that she indicated fear for her personal safety at the time she was with Culver.  "Such indeterminacy is not the hallmark of a duty that is mandatory." *Id.*

"Even if the statute could be said to have made enforcement . . . 'mandatory' because of the domestic-violence context of the underlying statute, that would not necessarily mean that state law gave *respondent* an entitlement to *enforcement* of the mandate." *Id.* at 764-65.  The *Castle Rock* Court found that the plaintiff's "alleged interest stems only from a State's *statutory* scheme – from a restraining order that was authorized by and tracked precisely the statute on which the [lower court] relied . . . . If she was given a statutory entitlement, we would expect to

see some indication of that in the statute itself." *Id.* at 765.  This court finds no such indication in the Mississippi statute either.

Even if this court were to find otherwise regarding the creation of an entitlement by the legislature, "it is by no means clear that an individual entitlement to enforcement of a restraining order could constitute a 'property' interest for purposes of the Due Process Clause.  Such a right would not, of course, resemble any traditional conception of property." *Id.* at 767.  Further, Supreme Court jurisprudence does not guarantee protection under the facts of the present case even if the alleged entitlement *does* create a property interest as explained in *DeShaney v. Winnebago County Dept. of Social Services*, where the Supreme Court found that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195 (1989).  The Court stated that the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196.  Supreme Court cases "have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.*

The *DeShaney* Court did note that while "a State's failure to protect an individual against private violence does not violate the Due Process Clause," at the same time, "a State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *Id.* at 197 n.3.  The plaintiff in the present case has made an equal protection argument in addition to her due process claim.  She invokes the Equal Protection

Clause and the First Amendment in arguing that the decedent was wrongfully denied access to the courts when Carrie Culver told her to travel to Plantersville to file the charges against Young. The plaintiff has failed adequately to allege, however, that discrimination was a motivating factor or that it even existed in this case. "In evaluating a claim that a governmental decision violated the Equal Protection Clause, we have long required a showing of discriminatory purpose." *Vieth v. Jubelirer*, 541 U.S. 267, 333 (2004) (citing *Washington v. Davis*, 426 U.S. 229 (1976)). Discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). Further, the plaintiff's argument has been rejected by the Fifth Circuit in *Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004). In *Beltran*, the plaintiff argued that the decedents' equal protection and statutory rights under the Texas Family Violence Prevention Act were violated by the City of El Paso when its 911 operator allegedly mishandled an emergency call. The caller, a fifteen-year-old female, and her mother were murdered by the girl's father. The court found that such claims were not cognizable under Section 1983 because Section 1983 "was designed to protect against the violation of *federal* constitutional and statutory rights, not those created by state statute." *Id.* at 302 n.1. "A claim for relief under § 1983 must allege the deprivation of a right secured by the Constitution or laws of the United States by a defendant acting under the color of state law." *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). The Fifth Circuit "has cautioned that the Equal Protection Clause should not be used to make an end-run around the *DeShaney* principle that there is no constitutional right to state protection for acts carried out by a private actor." *Beltran*, 367 F.3d at 304.

9

The facts of this case viewed in the light most favorable to the plaintiff show no indication of discrimination; and, even assuming arguendo that the defendant's policy had an adverse disparate impact on female victims of domestic abuse, "[t]here is no statistical or even anecdotal evidence [or allegations][2] in the record that women were systematically shortchanged or deprived of effective law enforcement." *Id.* at 305. The plaintiff's equal protection and First Amendment arguments must fail. Allowing the plaintiff to amend her complaint to include these claims would thus be futile.

<u>Conclusion</u>

For the foregoing reasons, the court finds that the plaintiff's motion to amend is not well taken and shall be denied. The defendant's motion for judgment on the pleadings shall be granted. A separate order in accord with this opinion shall issue this day.

This, the 12th day of February, 2010.

  */s/ Neal Biggers*
**NEAL B. BIGGERS, JR.**
**SENIOR U.S. DISTRICT JUDGE**

---

[2]The *Beltran* court reviewed a district court's summary judgment ruling. This court addresses a motion for judgment on the pleadings; thus, the court accommodates for the difference in standards of review.